**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| FERID M.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-2028-CJW<br><br>**REPORT AND RECOMMENDATION** |

Ferid M. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part** and **reversed in part**.

## ***I. BACKGROUND***

Claimant was born in 1970. (AR[1] at 51.) He graduated from high school in Slovenia, and his primary language is Bosnian. (*Id*. at 236.) Claimant allegedly became disabled due to back injury, hernia repair/injury, depression, right foot/leg injury, nerve pain, and anxiety. (*Id*. at 235.) Claimant's onset of disability date is May 10, 2021. (*Id*. at 14, 54.) On December 27, 2022, Claimant protectively filed his application for DIB. (*Id*. at 14, 53.) His claim was denied originally on August 3, 2023 (*id*. at 14, 51-64) and was denied on reconsideration on October 4, 2023. (*Id*. at 14, 65-76.) A hearing

[1] "AR" cites refer to pages in the Administrative Record.

was held on April 3, 2024, with Claimant and his attorney Hugh Field appearing by online video before Administrative Law Judge ("ALJ") Kim Fields. (*Id.* at 31-50.) Vocational Expert ("VE") Sheila Capizzi also appeared at the hearing. (*Id.*) Additionally, an unnamed Slovenian interpreter was also present at the hearing. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on May 2, 2024. (*Id.* at 14-24.)

Claimant requested review and the Appeals Council denied review on April 3, 2025. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On June 17, 2025, Claimant timely filed his Complaint in this Court. (Doc. 3.) On October 28, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## *II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

***A. The ALJ's Findings***

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2026. (AR at 16.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of May 10, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: depressive disorder, anxiety disorder, PTSD, and lumbar stenosis. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 17.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 12.04 (depressive disorders), 12.06 (anxiety disorders), and 12.15 (PTSD). (*Id.*) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 18.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except he can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can work at unprotected heights occasionally, moving mechanical parts occasionally, and operating a motor vehicle occasionally. He can be in extreme cold occasionally. The claimant is able to interact with the public occasionally.

(*Id.* at 18-19.) Also at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id.* at 22.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform,

including marker, sub-assembler, and silver wrapper. (*Id.* at 22.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 23-24.)

***B. The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."

*Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

Claimant alleges that the ALJ committed reversible error by (A) failing to properly evaluate the medical opinions of treating physician, Dr. Lydia Mustafic, M.D., and consultative psychologist, Dr. Courtney Stufflebeam, Ph.D.; (B) failing to properly evaluated Claimant's subjective allegations of disability; and (C) failing to determine whether Claimant is capable of performing the minimal language requirements for the jobs identified by the VE. (Doc. 8.)

### *A. Medical Opinions*

#### *1. Relevant Law*

The rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

***2. Dr. Mustafic's Opinions***

***a. Parties' Arguments***

Claimant argues that the "ALJ committed reversable error by failing to properly evaluate the medical opinions of Dr. Lydia Mustafic." (Doc. 8 at 19.) Specifically, Claimant argues that the "ALJ failed to properly consider the supportability of Dr. Mustafic's opinions." (*Id.* at 21.) Claimant maintains that the "ALJ's dismissal of Dr. Mustafic's opinion ignores the extensive objective medical evidence documented and specifically cited by Dr. Mustafic as support for her opinions generally." (*Id.* at 22.) Claimant also argues that the ALJ "failed to properly consider the consistency of Dr. Mustafic's opinions." (*Id.* at 24.) Lastly, Claimant asserts that the ALJ "failed to properly consider the relationship factor," given that Claimant's treatment relationship with Dr. Mustafic lasted nearly three years. (*Id.* at 25-26.) Claimant concludes that the "ALJ's finding Dr. Mustafic's opinions unpersuasive was not supported by substantial evidence." (*Id.* at 26.)

The Commissioner argues that the "ALJ properly evaluated Dr. Mustafic's medical opinion in accordance with 20 C.F.R. § 404.1520c." (Doc. 10 at 3.) Specifically, the Commissioner argues that "[i]n finding Dr. Mustafic's opinion

unpersuasive, the ALJ explained that the extreme limitations were inadequately supported by Dr. Mustafic's references to Plaintiff's diagnoses and subjective complaints rather than to objective findings." (*Id.* at 4-5.) The Commissioner concludes that the "ALJ articulated the level of persuasiveness, addressed the supportability and consistency factors, and identified substantial evidence to support his finding that Dr. Mustafic's opinion was unpersuasive." (*Id.* at 5.) The Commissioner maintains that "[n]o further articulation is required." (*Id.*) Additionally, the Commissioner notes that under the regulations, the ALJ did not need to address the relationship factor because the ALJ did not find "two or more opinions on the same issue to be equally well supported." (*Id.* at 6) (citing 20 C.F.R. § 404.1520c(b)(2)-(3)).

***b. Pertinent Medical Evidence***

On March 20, 2024, Claimant's treating doctor, Dr. Mustafic, provided a "Physical Medical Opinion" for Claimant. (AR at 2132-36.) Dr. Mustafic diagnosed Claimant with failed back syndrome, ankylosing spondylitis, GAD, severe major depression, avascular necrosis bilaterally in the hips, chronic pain syndrome, OAB, ABN stress test, hiatal hernia, PTSD, and bilateral inguinal hernias. (*Id.* at 2132.) Dr. Mustafic opined that Claimant's prognosis was "poor." (*Id.*) Dr. Mustafic listed the following symptoms for Claimant: chronic low back pain, bilateral hip pain, groin pain, right leg numbness and pain, bilateral hand pain, anxiety, depression, dizziness from medications, and fatigue. (*Id.*) Dr. Mustafic opined that Claimant's impairments have lasted or can be expected to last at least twelve months and Claimant is not a malingerer. (*Id.*) Further, Dr. Mustafic opined that Claimant's depression and anxiety contribute to the severity of Claimant's symptoms. (*Id.* at 2133.) Dr. Mustafic opined that Claimant's experience of pain "constantly" interferes with his attention and concentration. (Id.) Dr. Mustafic determined that had the following limitations: (1) the ability to walk 0 blocks without rest or severe pain; (2) the ability to sit for 10 minutes at one time before needing

to get up; (3) the ability to stand for 5 minutes at one time before needing to sit or walk around; (4) the ability to sit/walk less than 2 hours in a typical eight-hour workday; and (5) the ability to sit less than 2 hours in a typical eight-hour workday. (*Id.*) Dr. Mustafic opined that Claimant is "unable to work." (*Id.*) Dr. Mustafic also opined that Claimant "cannot work" and "if he did [work] he would have to take a break every 30 min[utes]." (*Id.* at 2134.) According to Dr. Mustafic, Claimant's muscle weakness, chronic fatigue, pain, and adverse effects to medication would require frequent breaks. (*Id.*) Dr. Mustafic noted that "[i]n the evenings [Claimant is] weak [and] uses [a] cane." (*Id.*) Dr. Mustafic found that Claimant can never: lift any weight in competitive work situations and never twist, stoop, crouch/squat, climb stairs, and climb ladders in competitive work situations. (*Id.*) Dr. Mustafic opined that Claimant "cannot participate in competitive work situations." (*Id.*) Dr. Mustafic determined that Claimant could use his hands to grasp, twist, and turn objections, use his hands for fine manipulation, and use his arms for reaching in front of his body and overhead 20 percent of the time in a typical eight-hour workday. (*Id.* at 2135.) Dr. Mustafic opined that Claimant would be off task due to difficulties with attention and concentration more than 25 percent of a typical workday. (*Id.*) Dr. Mustafic also opined that Claimant was incapable of low stress work and would miss more than four days per month due to his impairments. (*Id.*) Finally, Dr. Mustafic indicated that the following factors were considered in determining her conclusions regarding Claimant's functional abilities: experience treating Claimant over time, intensity, persistence, and functionally limiting effects of Claimant's symptoms, Claimant's own description of his limitations, consistency of Claimant's complaints over time, Claimant's response to treatment, Claimant's daily activities (he "sits at home depressed all day"), and the degree of consistency of Claimant's complaints with the medical signs and laboratory findings. (*Id.* at 2136.)

### *c. Analysis*

In considering Dr. Mustafic's opinions, the ALJ determined that:

> The medical opinions of Lydia Mustafic, M.D., are unpersuasive (Ex. 21F). The severe limitations, including that the claimant would be off task 25% or more and would miss more than four days of work per month, are inadequately supported by reference to the claimant's diagnoses and subjective complaints, as opposed to objective findings. Moreover, the severe limitations are not consistent with generally intact mental status and physical examination observations as noted throughout the period at issue (Ex. 4F/5-6; 6F/116; 16F/5; 19F/7).

(AR at 21.) Additionally, the ALJ thoroughly reviewed Claimant's medical history as it relates to Claimant's physical impairments. *See* AR at 19-20. Specifically, the ALJ made the following findings:

> Turning to the objective medical evidence related to the claimant's spine impairments, hospital records from around the time of the claimant's alleged onset date show he had a hernia repair and was "focused on asking for a work limit of 20 pounds indefinitely" (Ex. 3F/2). Subsequently, the claimant underwent L4-5 and L5-S1 laminotomies performed on August 3, 2021. The claimant reported ongoing back pain despite receiving an injection in January 2022. He reported ongoing, chronic lower back pain and felt he was not ready to return to work, which involved painting tractors and combines. The claimant's employer was not able to accommodate a change to a less physical job. He was prescribed both ibuprofen and Flexeril (Ex. 4F/5). Physical examination showed intact lower extremity strength and no neurologic deficits (Ex. 4F/5-6). Radiographic imaging showed postop changes, as well as degenerative disc disease and facet arthropathy at L4-5 with mild canal stenosis, mild foraminal stenosis, and moderate bilateral subarticular stenosis. Diffuse disc bulge was also noted (Ex. 4F/6). The claimant's neurologist opined further surgical intervention would not be helpful but counselled that medication could help. They discussed that "at this time we have no restrictions keeping him off of work," and counselled the claimant to continue core strengthening exercises (Ex. 4F/6).

> Physical therapy records from 2022 show the claimant was able to ambulate effectively, without observed abnormality, and could walk on toes and heels and could squat down and return without use of his hands (Ex. 5F/30). He was discharged after only attending four sessions (Ex. 5F/39). Records from his primary care physician show observation of tenderness to the lower back and right leg on exam, but otherwise intact musculoskeletal and neurological observations (Ex. 6F/116). Subsequently, records from July 2022 show the claimant reported ongoing discomfort in his lower back and radiated down his right leg. The claimant reported that he was not working, but that anytime he worked in the garage or does active physical activities, there was aggravation of pain (Ex. 7F/6).
>
> Consistent with prior records, treatment records from September 2023 indicate that the claimant's spine impairments are accommodated with the residual functional capacity limitations outlined above, which call for less than the full range of light work. During this visit, the claimant reported ongoing back pain, which did not seem to improve after his surgery. However, the provider noted the claimant ambulated independently, including noting the claimant "performs quite well on toe and heel walking." There was possible observation of "some weakness" on the left lower extremity, no worse than (5/4+), with full range of motion of both legs, negative straight leg raise testing, no evidence of atrophy or sensory loss, and no evidence of motor or sensory deficits (Ex. 16F/5). Accordingly, the undersigned finds the claimant's physical impairments are accommodated with a restriction to light work, with limited postural maneuvers and limited exposure to work and environmental hazards.

(*Id.*)

Based on the foregoing, I find that the ALJ both properly considered Dr. Mustafic's opinions and properly addressed the consistency and supportability of Dr. Mustafic's opinions. The ALJ also properly supported her conclusions that Dr. Mustafic's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. I also note that an "ALJ is not required to explicitly [] reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quotation and citation

omitted). Additionally, as the Commissioner points out, under the regulations, an ALJ is not required to address other factors outside supportability and consistency unless certain requirements are met, which are not met here. *See* 20 C.F.R. § 404.1520c(b)(3) ("When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision."). Thus, "[h]aving considered the supportability and consistency" of Dr. Mustafic's opinions, "the ALJ did not need to discuss other factors." *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). "Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Mustafic's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

### 3. *Dr. Stufflebeam's Opinions*

#### a. *Parties' Arguments*

Claimant argues that the "ALJ committed reversable error by failing to properly evaluate the medical opinions of Dr. Courtney Stufflebeam." (Doc. 8 at 26.) Specifically, Claimant argues that "Dr. Stufflebeam's comprehensive assessment supports significant concentration deficits." (*Id.* at 28.) Claimant also argues that the "ALJ ignored the consistency between medical opinions." (*Id.* at 29.) Claimant contends that the limitations provided in Dr. Stufflebeam's psychological evaluation aligned with

Dr. Mustafic's restrictions. (*Id.*) Claimant concludes that the "ALJ's errors presented reasoning frustrating review, requiring remand." (*Id.* at 30.)

The Commissioner argues that the "ALJ properly evaluated Dr. Stufflebeam's medical opinion in accordance with 20 C.F.R. § 404.1520c." (Doc. 10 at 6.) Specifically, the Commissioner points out that the "ALJ found that the opined mild and moderate limitations were consistent with examinations by other providers, but the opined significant limitations in concentration and pace were not." (*Id.* at 7) (citing AR at 21.) The Commissioner concludes that the ALJ's evaluation of Dr. Stufflebeam's opinions complied with the regulations and should be affirmed. (*Id.*)

***b. Pertinent Medical Evidence***

On July 14, 2023, Dr. Stufflebeam performed a psychological evaluation for Claimant. (AR at 1616-19.) Dr. Stufflebeam noted that Claimant did not speak English well and had an interpreter. (*Id.* at 1616.) Dr. Stufflebeam also noted that Claimant graduated from high school in Bosnia and denied any special assistance or difficulty with school subjects. (*Id.* at 1617.) Claimant reported that he planned to attend college, but the war started and he was unable to attend additional schooling. (*Id.*) Claimant's work history included a job at Tyson Foods, working at BPI for four years, and working at PPG performing manual labor for approximately 18 years. (*Id.*) He suffered a work injury, hurting his foot and back when a 2,000-pound tractor fell on him. (*Id.*) He lost his job at PPG due to his back injury and inability to work. (*Id.*) Claimant and his family (Claimant's wife and daughter attended the evaluation) described his mood as sad. They reported poor sleep, noting that Claimant woke up several times per night due to nightmares. They reported that Claimant has poor appetite and lacks energy and motivation to do things. Claimant was also described as irritable and anxious. They reported that Claimant does not like crowds and tries to forget memories of the war. According to his family, Claimant is frustrated due to his loss of independence and

inability to do things he could do before. (*Id.* at 1617-18.) Dr. Stufflebeam noted that Claimant reported being forgetful and having difficulty with the ability to concentrate and hold attention to things. (*Id.* at 1618.) Claimant and his family reported that Claimant has difficulty "doing anything" due to back pain and lacks a desire to complete basic hygiene tasks. (*Id.*) Claimant reported that he is "able to help his wife cook and clean, but he needs to be very intentional about his movements and needs to rest frequently." (*Id.*) Dr. Stufflebeam diagnosed Claimant with PTSD and major depressive disorder, mild, single episode. (*Id.*) Dr. Stufflebeam noted that Claimant's prognosis was guarded to poor. (*Id.*) Dr. Stufflebeam opined that:

> [Claimant] has significant physical limitations and mental health diagnoses that impact his ability to work and live without assistance. His back issues limit his ability to do anything physical without needing to take breaks or deal with pain. His depression causes a lack of motivation and energy, and his PTSD impacts his sleep, desire to be around others and overall anxiety.

(*Id.* at 1618-19.) Dr. Stufflebeam further opined that Claimant: (1) had "no deficits" in the ability to understand instruction, procedures, and locations;[2] (2) had "significant deficits" in the ability to carry out instructions, maintain concentration and pace;[3] (3) had "moderate deficits" in the ability to interact appropriately with supervisors, co-workers, and the public; (4) had "mild deficits" in the ability to use good judgment and respond appropriately to changes in the workplace; and "no deficits" in the ability to handle funds. (*Id.* at 1619.)

***c. Analysis***

In considering Dr. Stufflebeam's opinions, the ALJ determined that:

---

[2] Dr. Stufflebeam noted that due to Claimant's language barriers, these abilities were not formally assessed. (AR at 1619.)

[3] Dr. Stufflebeam noted that Claimant would need "frequent breaks and accommodations to help manage his pain. It will take longer for him to complete things due to his inability to engage physically with tasks." (AR at 1619.)

> The medical opinions of Courtney Stufflebeam, Ph.D., consultative examiner, are partially persuasive, and the undersigned credits the moderate social interaction limitations, as well as mild limitations in responding to changes in the workplace, are supported by an examination that showed the claimant to be stressed and overwhelmed during the interview (Ex. 13F). However, the "significant" deficits in concentration, persistence, and pace are only supported by reference to the claimant's physical pain, though this was a psychological consultative exam. The physical limitations are thus not well-supported. Overall, the moderate and mild mental impairments are largely consistent with the other evidence, while the concentration, persistence, and pace limitations are not, as evidenced by treatment records showing some mood abnormalities, but with a general absence of noted concentration, cognition, insight, or judgment deficits (Ex. 6F/116; 10F/9-11; 14F/4; 17F/244; 19F/7).

(AR at 21.) Additionally, the ALJ thoroughly reviewed Claimant's medical history as it relates to Claimant's mental health impairments. *See* AR at 20-21. Specifically, the ALJ made the following findings:

> Turning to the claimant's mental impairments, the claimant reported in November 2022 that he was recommended for behavioral/mental health treatment. He also requested referral through Iowa Workforce to see if he could perform "another job" (Ex. 6F/112). He was taking Cymbalta for depressive symptoms (Ex. 6F/113). He also attended behavioral counseling during 2022 and 2023. The claimant reported ongoing anxiety and depression symptoms, including reporting he was unable to maintain concentration and had withdrawn from social relationships (Ex. 10F/3). However, when this provider administered mental status exams, the findings were largely unremarkable. The claimant had some observed anxious, angry, or depressed mood, but with otherwise stable affect good judgment and insight, no suicidal ideation, friendly and cooperative manner, and logical thought process (Ex. 10F/9-11).
>
> The claimant attended a consultative examination in July 2023 (Ex. 13F). He appeared adequately groomed; however, there was a smell of body odor. He displayed no eye contact, and all questions were answered. His speech was of normal rate and of quieter volume. Hearing was intact. Gross motor activity was slower than average, and he needed to get up and walk

> around the office every once in a while, due to back pain. His mood presented as stressed and overwhelmed, often rubbing his eyes and face with his hands. Affect was congruent. No hallucinations, delusions, or psychosis present. He was respectful to the examiner during the interview (Ex. 13F/3).
>
> Subsequent treatment records from 2023 show the claimant reported ongoing, stable depression and anxiety, with no psychotic symptoms reported (Ex. 14F/1). The claimant was observed to show constricted affect but with otherwise intact mental status on exam (Ex. 14F/4; 22F/14). Overall, the claimant's mental status warrants restrictions on interacting with the public, as the claimant testified his symptoms were exacerbated by being around strangers, and with mental status examinations showing observation of mood abnormalities, including observed depression, anger, or anxiety (Ex. 6F/116; 10F/9-11; 14F/4; 17F/244; 19F/7).

(*Id.*)

Based on the foregoing, I find that the ALJ both properly considered Dr. Stufflebeam's opinions and properly addressed the consistency and supportability of Dr. Stufflebeam's opinions. The ALJ also properly supported her conclusions that Dr. Stufflebeam's opinions concerning concentration, persistence, and pace were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. I also note that an "ALJ is not required to explicitly [] reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quotation and citation omitted). "Having considered the supportability and consistency" of Dr. Stufflebeam's opinions, "the ALJ did not need to discuss other factors." *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). "Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr.

Stufflebeam's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

### *B. Subjective Allegations of Disability*

#### *1. Parties' Arguments*

Claimant argues that the "ALJ's focus on objective medical evidence, to the virtual exclusion of all other evidence, violates SSA policy regarding the evaluation of symptoms." (Doc. 8 at 31.) Specifically, Claimant asserts that the ALJ "failed to adequately consider the *Polaski* factors beyond the objective medical evidence" and failed to adequately consider the other *Polaski* factors. (*Id.*) Claimant maintains that "ALJs cannot rely solely on lack of objective medical support, as this represents only one factor in the analysis, and must provide reasons for discrediting the claimant." (*Id.* at 32.)

The Commissioner argues that the ALJ properly evaluated Claimants subjective allegations of symptoms and disability in compliance with the regulations and *Polaski*. (Doc. 10 at 8.) The Commissioner maintains that "[i]n addition to the objective medical evidence, the ALJ also considered Plaintiff's testimony and reports, type and effectiveness of treatment, and daily activities, as well as medical opinions in prior administrative findings." (*Id.* at 9-10) (citing AR at 16-22).

#### *2. Relevant Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration,

> frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322; *see also* SSR 16-3P (S.S.A.), 2017 WL 5180304, at *7-8 (outlining factors nearly identical to the factors found in *Polaski* for evaluating the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

***3. Analysis***

In assessing Claimant's credibility, the ALJ determined that:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. . . .

The claimant alleged he stopped working in March 2022, due to a back injury, in addition to depression and anxiety (Ex. 3E/2). The claimant described that he has chronic back pain that radiates down his right leg, with associated weakness and numbing. He reports that he cannot lift over 15 pounds, and has additional difficulties bending, twisting, walking, standing, and even sitting for extended periods (Ex. 12E). At the hearing, the claimant testified that he has ongoing back pain, which has worsened after an unsuccessful surgery. He stated that he can lift no more than 10 pounds. The claimant also testified he has PTSD, anxiety, and is "stressed." He has difficulties being around strangers and does not socialize with many people.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR at 19.)

Here, the ALJ states that she considered the factors set forth in SSR 16-3p and then, using boilerplate language, determined that Claimant's testimony was not consistent with the medical records, finding that although Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the [C]laimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) However, as Claimant argues, the ALJ essentially addresses only the objective medical evidence in making her finding. *See Renstrom*, 680 F.3d at 1066 (providing that an ALJ may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them"). Contrary to the

Commissioner's assertion that the ALJ fully considered the Polaski factors, instead in reviewing Claimant's medical history, the ALJ "referenced" a steroid injection. The ALJ also "noted" Plaintiff was taking ibuprofen and Flexeril at a medical visit and was advised to continue taking medication. Further, the ALJ noted that Claimant attended four physical therapy sessions. Finally, the ALJ referenced that Claimant took Cymbalta for mental health issues. (Doc. 10 at 10-11.) The ALJ did not mention any of the above evidence in relation to Claimant's credibility, nor did the ALJ discuss the effectiveness of any of the medications or physical therapy that the ALJ "mentioned" or "noted" in her decision. *See Schultz*, 479 F.3d at 983 (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so); *Johnson*, 240 F.3d at 1148 (providing that where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination). The Commissioner also states that the ALJ mentioned Claimant's daily activities. However, the ALJ discussed Claimant's daily activities at step three of the evaluation framework and in the context of determining the severity of Claimant's mental health issues. The ALJ did not discuss Claimant's daily activities at step four and did not address Claimant's daily activities in relation to his testimony or credibility. *See id.* Because the ALJ's consideration of Claimant's subjective allegations of disability and credibility determination do not address the inconsistencies with the record as a whole and the ALJ's decision provides no good reasons or explicit discrediting of claimant's subjective complaints, I find that remand is appropriate. *See Wildman*, 596 F.3d at 968; *Johnson*, 240 F.3d at 1148. Accordingly, I recommend that the Court remand this matter for the ALJ to fully address and consider Claimant's subjective allegations of disability.

### *C. Basic Minimum Language Requirements*

#### *1. Parties' Arguments*

Claimant argues that it was improper for the ALJ to fail "to determine whether [Claimant] can perform basic minimum language requirements for the jobs identified by the Vocational Expert." (Doc. 8 at 32.) Claimant asserts that despite his "difficulties communicating in English the vocational expert identified three jobs the claimant could perform without explaining how these jobs could be performed without at least minimum Language Level 1 proficiency with speaking, reading and writing in English." (*Id.* at 34.) Claimant maintains that remand is required.

The Commissioner argues that Claimant did not establish an apparent conflict requiring a resolution. (Doc. 10 at 11.) Specifically, the Commissioner argues that Claimant's "argument fails because he has cited no authority to support his claim that language levels 1 and 2 in the DOT require English language proficiency." (*Id.*) The Commissioner points out that none of the DOT job descriptions for the jobs identified by the VE reference any English language requirements. (*Id.*) The Commissioner also points out that, at the hearing, Claimant's attorney "asked the VE several questions on cross-examination but no questions about DOT language levels or whether limitations with the English language would impact the job [the VE] identified." (*Id.* at 13-14.) Finally, the Commissioner notes that Claimant "was employed for many years before alleging disability . . . despite his alleged English language limitations." (*Id.* at 14.)

#### *2. Analysis*

At "step five of the sequential evaluation process the burden shifts to the Commissioner to show that the claimant can perform other types of work and that the particular type of work is available in the national economy." *Crawford v. Colvin*, 809 F.3d 404, 409 (8th Cir. 2015). An ALJ "'may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist

in significant numbers which a person with the claimant's residual functional capacity can perform.'" *Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (quoting *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004)). However, "an ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018). "If there is an 'apparent unresolved conflict' between [vocational expert] testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the vocational expert] provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.'" *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p,[4] 2000 WL 1898704, at *2-4 (Dec. 4, 2000)); *see also Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1003 (8th Cir. 2018) ("SSR 00-4p places an affirmative responsibility on the ALJ 'to ask about "any possible conflict" between [vocational expert] evidence and the DOT, and to obtain explanation for any such conflict, before relying on [vocational expert] evidence to support a determination the claimant is not disabled.'") (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)).

In *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555 (8th Cir. 2018), the Eighth Circuit explained that:

> The Dictionary of Occupational Titles provides "standardized occupational information" by listing the functional requirements for a number of jobs available in the national economy. 1 Dictionary of Occupational Titles, at

[4] SSR 00-4p was rescinded and replaced with SSR 24-3p which took effect on January 6, 2025. The Ruling stated, "We are rescinding SSR 00-04p and will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." SSR 24-3p, 2024 WL 5256990, at *2 (Dec. 6, 2024)." However, because the ALJ's decision in this case was issued before January 6, 2025, the Court applies SSR 00-4p. *See id*. ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

> xv (4th rev. ed. 1991). The reference book explains, however, that the job characteristics for each position "reflect[ ] jobs as they have been found to occur, but . . . may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Id*. at xiii. Thus, "not all of the jobs in every category have requirements identical to or as rigorous as those listed in the [Dictionary]." *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). The reference book "gives the approximate maximum requirements for each position." *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). As a result, an ALJ in some instances may rely on testimony from a vocational expert that conflicts with the job requirements listed in the Dictionary—for example, if the expert limits his testimony to jobs within a particular Dictionary description that require less than the listed maximum functional requirements. *See Thomas v. Berryhill*, 881 F.3d 672, 677-78 (8th Cir. 2018).
>
> This court, however, long has held that before an ALJ can rely on a vocational expert's testimony that appears to conflict with a Dictionary listing, the ALJ must identify and resolve the conflict. Otherwise, the vocational expert's testimony is not substantial evidence to support a denial of benefits. *See Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997); *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995). In 2000, the Commissioner adopted this rule as its own in Social Security Ruling 00-4p, and we have continued to apply it. Whether the vocational expert's testimony is substantial evidence in support of the ALJ's decision thus depends on whether the expert's testimony appears to conflict with the Dictionary, and if so, whether the ALJ resolved the conflict.

*Id*. at 558.

Here, the DOT job descriptions for marker (DICOT 209.587-034 (G.P.O.), 1991 WL 671802) and silver wrapper (DICOT 318.687-018 (G.P.O.), 1991 WL 672757) require "Language Level 1" which provides:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

The DOT job description for the sub-assembler job requires "Language Level 2" which provides:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

Here, it is true that Claimant has difficulty speaking English, as he used an interpreter at the administrative hearing. However, he worked full-time at multiple jobs over twenty-five years, and the DOT job descriptions do not require the ability to speak English. Claimant has a high school education and intended to go to college before the war in Bosnia. There is no allegation or finding of illiteracy in this case like in *Leiva v. Berryhill*, No. 8:18CV461, 2019 WL 3325350 (D. Neb. July 24, 2019), relied on by Claimant. Moreover, the relevant regulations provide that ALJ's evaluate a claimant's education as follows:

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you

> completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. In evaluating your educational level, we use the following categories:
>
> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564(b). Here, under the current regulations and the evidence in the record, there is no apparent unresolved conflict necessary to resolve. Accordingly, I recommend that the Court affirm this part of the ALJ's decision.

## *IV. CONCLUSION*

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM in part** and **REVERSE and REMAND in part** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 14th day of September, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa